USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
MADELEINE C. BALL, :
:
                Plaintiff, :    17-CV-4828 (JMF)
:
    -v- :    OPINION AND ORDER
:
NEW YORK CITY COUNCIL et al., :
:
                Defendants. :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Madeleine Ball, proceeding *pro se*, brings this action against the New York City Council (the "City Council"), and two employees of the City Council, Staff Photographer for the City Council Press Office, William Alatriste, and Chief of Staff to the Speaker of the City Council, Ramon Martinez. Ball brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), New York contract law, and New York Labor Law ("NYLL") to recover unpaid wages for her alleged employment at the City Council Press Office during the summer of 2015. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety. (Docket Nos. 24, 51). For the reasons discussed below, Defendants' motions are DENIED in part and GRANTED in part.

## BACKGROUND

        The following facts, taken from the Amended Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001). Ball worked as "a photojournalism intern" at the City Council Press Office from June 14, 2015 to August 29, 2015. (*See* Docket No. 18 ("Am. Compl."), at ¶¶ 5, 10). Ball alleges that she first

learned of the position in March 2015, when Alatriste appeared as a guest speaker in her photojournalism class at New York University.  (*Id.* ¶ 10).  She claims that Alatriste described the internship "as paid and full-time"; when she asked him what the rate of pay was, however, he "said that he didn't know the rate."  (*Id.*).  Thereafter, the two spoke, and Alatriste "offered her the position," once again assuring her that the internship "would be a paid one."  (*Id.* ¶ 12).  Ball does not allege that she completed any paperwork before beginning at the City Council, but shortly after she began, Alatriste "told her that she had to fill out an application to continue working."  (*Id.* ¶¶ 13-16).  Although the "application" was titled "Council Application for Unpaid Positions," and included an acknowledgment titled "Orientation Packet & Acknowledgment (Unpaid Positions)" that Ball signed, Alatriste told her that the "paperwork was just a formality" and that she "would still be paid."  (*Id.* ¶ 16).

During her tenure at the City Council, Ball was responsible for covering events throughout New York City, sometimes independently and without supervision; she alleges that, "at times," she fulfilled the same responsibilities as Alatriste.  (*Id.* ¶¶ 23, 27).  She further claims that she did not receive formal training or significant educational benefits in the position; nor did she receive academic credit.  (*Id.* ¶¶ 26, 28).  Ball alleges that throughout her internship, she asked for payment once or twice a week, and Alatriste "verbally reassured" her that she would be paid, "with words to the effect of 'Don't worry, I'm working on getting you paid,' and 'You will be paid eventually.'"  (*Id.* ¶ 20).  She claims that Alatriste also sent her reassuring texts, "saying, for example, 'I'm almost certain that I'll be able to pay your for the internship.' (sic)."  (*Id.*). "Around July of 2015," Alatriste finally told Ball "that she would be paid $15.00 per hour for all the work she had done and would continue to do."  (*Id.* ¶ 21).  He also "repeatedly asked" her to record her hours for the purposes of payment.  (*Id.* ¶ 22).

Ball avers that she continued to work despite not getting paid because Alatriste "repeatedly told her that she would ultimately be paid." (*Id.* ¶ 29). At some point (she does not specify when), she suggested to Alatriste that she reach out to Martinez, the City Council Speaker's Chief of Staff, about her nonpayment, but Alatriste responded in a text that doing so "would be the 'Worst thing you Could do.' [sic]." (*Id.*). Further, Alatriste "repeatedly warned her that contacting Human Resources or [the] Council Speaker . . . about her nonpayment would result in unspecified disciplinary action." (*Id.*). Ball alleges "[u]pon information and belief," however, that Martinez "was aware" that she was working for the City Council and not being paid. (*Id.* ¶ 30). In July and August 2015, Alatriste "repeatedly stated" that Martinez "was apprised of the situation but was reluctant to pay her." (*Id.*). In the end, despite repeated requests — including many after the internship ended — Ball never received payment. (*Id.* ¶¶ 34-35).[1] She claims that, in total, she "performed 236.25 hours of work" for the City Council from June 14, 2015, to August 29, 2015, for which she was never compensated. (*Id.* ¶ 35).

## LEGAL STANDARDS

Defendants move to dismiss pursuant to Rule 12(b)(6).[2] In evaluating that motion, the Court must accept all facts set forth in the Amended Complaint as true and draw all reasonable

---

[1] Although the Amended Complaint alleges that the internship ended in August 2015, it also alleges — without explanation — that, "[a]round October 2015," Alatriste informed Ball "that he was giving her the title of 'Assistant,' in order to ensure that she was paid." (*Id.* ¶¶ 5, 32).

[2] Defendants frame their motion to dismiss Ball's FLSA claim — on the ground that she did not qualify as an "employee" within the meaning of the statute — as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). (Docket No. 25 ("Defs.' Mem.") 7-9). Although that finds some support in older cases, *see, e.g.*, *Lifrak v. New York City Council*, 389 F. Supp. 2d 500, 503-06 (S.D.N.Y. 2005), more recent Supreme Court precedent makes plain that the argument goes to the merits, not the Court's power to adjudicate Ball's claim and, thus, is not actually jurisdictional, *see, e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010). In the final analysis, however, the difference is purely academic.

inferences in Ball's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, because Ball is proceeding *pro se*, her pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Nonetheless, a *pro se* litigant must still state a plausible claim for relief. Put another way, the Court's duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Thomas v. N.Y. City Dep't of Educ.*, No. 15-CV-8934 (JMF), 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016) (internal quotation marks, citation, and alterations omitted).

## DISCUSSION

Ball brings claims against the City Council as well as Alatriste and Martinez, in both their official and individual capacities, for failure to pay minimum wage under FLSA, for breach of contract under New York law, and for failure to pay minimum wage under the NYLL. Ball's claims against Alatriste and Martinez in their official capacities are duplicative of her claims against the City Council and, thus, can be dismissed. *See, e.g.*, *Demski v. Town of Enfield*, No.

3:14-CV-01568-VAB, 2015 WL 4478401, at *3 (D. Conn. July 22, 2015) ("[D]istrict courts within the Second Circuit consistently dismiss as duplicative claims asserted against officials in their official capacities where the plaintiff has named the municipal entity as a defendant." (citing cases)). Ball's claims against the City Council and Alatriste and Martinez in their individual capacities, however, require further discussion, to which the Court now turns.

## A. The FLSA Claims

Defendants properly raise only one argument in support of their motion to dismiss Ball's FLSA claim against the City Council: that she did not qualify as an "employee" within the meaning of the statute. (Defs.' Mem. 7-9).[3] Under Title 29, United States Code, Section 203(e)(2)(C), the term "employee" includes "any individual employed by a State, political subdivision of a State, or an interstate governmental agency, *other than* such an individual (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him" *and* "(ii) who . . . is an employee in the legislative branch or legislative body of that State, political subdivision, or agency . . . ." 29 U.S.C. § 203(e)(2)(C). The City Council is, of course, "the principal legislative body of the City of New York, a political subdivision of the State of New York." *Lifrak*, 389 F. Supp. 2d at 504. Thus, the question of whether Ball

---

[3] Defendants raise three other arguments: (1) that Ball's unpaid internship did not qualify as employment under *Glatt v. Fox Searchlight Pictures*, 811 F.3d 528 (2d Cir. 2015), (*see* Defs.' Mem. 9 n.6); (2) that Ball's FLSA claims are time barred at least in part, (*see id.* at 9 n.7); and (3) that Ball fell within the FLSA's exemption for "volunteers." (*See* Docket No. 42 ("Defs.' Reply"), at 6). The first two of these arguments, however, are made almost exclusively in footnotes (and in the case of the first, Defendants expressly state that the Court need not address it), and the third is made for the first time in reply. Accordingly, the Court declines to consider any of them here. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *Levine v. Lawrence*, No. 03-CV-1694 (DRH), 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) ("[F]ailure to adequately brief an argument constitutes waiver of that argument . . . ."); *United States v. Fernandez*, No. 17-CR-167 (JMF), 2017 WL 6372783, at *1 n.2 (S.D.N.Y. Dec. 12, 2017) ("It is well established that a party may not raise new arguments in a reply.").

qualified as an "employee" for purposes of the FLSA turns on whether she was "subject to the civil service laws of" New York State. 29 U.S.C. § 203(e)(2)(C)(i).

The Court concludes that Ball makes a plausible showing that she was technically subject to New York's civil service laws. Under Section 35 of the Civil Service Law, civil service employees are either "classified" or "unclassified." N.Y. Civ. Serv. L. § 35. The former are subject to the civil service laws of the state, while the latter are not. *See Lifrak*, 389 F. Supp. 2d at 505 (citing cases). Significantly, however, the unclassified category includes only some employees of legislative bodies, namely "all officers and employees of the state legislature, and all officers and employees of any other legislative body whose principal functions and duties are directly related to the performance of the legislative functions of such body." N.Y. Civ. Serv. L. § 35(c). And the classified category, by contrast, is defined by exclusion as "all offices and positions not included in the unclassified service." *Id*. § 40. It follows that Defendants are wrong in arguing that *all* workers for the City Council "are exempt from the FLSA under the 'legislative body' provision." (Defs.' Mem. 9). Instead, the exemption applies only to those City Council workers whose "principal functions and duties are directly related to the performance of the legislative functions of such body." *See* N.Y. Civ. Serv. L. § 35(c). Ball, whose work involved taking photographs of City Council members and events, would appear to fall outside that category.[4]

---

4   In their reply memorandum of law, Defendants cite documents from the New York City Department of Citywide Administrative Services ("DCAS") stating "that one-hundred percent of employees for the City Council were in the unclassified category" in the 2015 and 2016 fiscal years. (Defs.' Reply 5-6 n.2). Defendants suggest that this Court should defer to that characterization. (*See id.*). As DCAS's statement appears to be inconsistent with the New York State law discussed above, the Court declines to do so here.

In their reply memorandum of law, Defendants assert that Ball "was not in a civil service position subject to civil service laws" because "she was a temporary student summer intern." (Defs.' Reply 4). Conspicuously, however, Defendants cite no authority in support of that conclusory assertion. Nor do they acknowledge either Section 2(5) of the New York Civil Service Law, which broadly defines the civil service as including "all offices and positions in the service of the state or of such civil divisions," N.Y. Civ. Serv. L. § 2(5), or cases suggesting that an "intern" can fall within the civil service, *see, e.g.*, *Etere v. City of New York*, No. 08-CV-2827 (LAP), 2009 WL 498890, at *1 (S.D.N.Y. Feb. 24, 2009) (noting that the plaintiff had applied for a "civil service position as an Agency Attorney Intern"); *Sanni v. New York State Office of Mental Health*, No. 96-CV-5720 (JG), 2000 WL 194681, at *1 (E.D.N.Y. Feb. 15, 2000) (noting that the plaintiff "began working at the New York State Office of Mental Health in 1988 as an 'Administrative Intern,' which carries a civil service grade level of fourteen"); *Bell v. Nassau Cty. Civ. Serv. Comm'n*, 203 A.D.2d 285, 286 (N.Y. 2d Dep't 1994) (reviewing determinations of Civil Service Commission that the petitioners were not qualified for appointment to the civil service positions of "Systems Programmer Intern" and "Programmer Analyst Intern"); *cf. Papa v. Ravo*, 70 A.D.2d 59, 66 (N.Y. App. Div. 1979) (holding that workers appointed as part of a temporary employment program were not subject to New York's civil service laws, in large part because the funding for the positions came from an outside source, namely the federal government). Those authorities suggest that, contrary to Defendants' assertions, Ball could have been subject to New York's civil service laws even if she was properly classified as an "intern" for state-law purposes. At a minimum, they suggest that the question is more complicated than Defendants would have the Court believe. Accordingly, the Court will not dismiss Ball's claims

on that basis at this stage of the proceedings — and will reserve judgment on the question pending more adequate briefing at the summary judgment stage.

In light of the foregoing, the Court declines to dismiss Ball's FLSA claims on the ground that she was not an "employee" within the meaning of the statute. Defendants make one other argument for dismissal of the claims against Alatriste and Martinez in their individual capacities: that they cannot be held liable as her "employer" under the statute. (Docket No. 52, at 5-9). A corporate executive or officer can, in some circumstances, be held individually liable as an "employer" under FLSA, as "[t]he Supreme Court has emphasized the 'expansiveness' of FLSA's definition of employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). To determine whether an individual qualifies an "employer" under the statute, courts consider four factors derived from *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir. 1984): whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See, e.g.*, *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013).

In light of those factors, the claims against Martinez in his individual capacity must be dismissed, as the Amended Complaint includes no allegations suggesting that he had the power to hire or fire Ball, that he supervised or controlled her schedule or conditions of employment, that he determined the rate and method of payment, or that he maintained employment records. In fact, the Amended Complaint includes almost no allegations with respect to Martinez whatsoever, asserting only that "[u]pon information and belief," he was "aware" that Ball was working for the City Council and not being paid. (Am. Compl. ¶ 30). That one allegation is plainly insufficient to support a finding that Martinez was Ball's "employer" within the meaning

of the FLSA.  By contrast, the Amended Complaint does allege facts that plausibly support a finding that Alatriste was Ball's "employer" under the statute.  For instance, it alleges that he hired Ball, controlled her schedule and supervised her directly, told her what her rate of payment would be, and asked her to keep employment records.  (Am. Compl. ¶¶ 12, 21-22, 24-25).  Treating those allegations as true, Ball's FLSA claim against Alatriste in his individual capacity cannot be dismissed.

**B.  The Contract Claims**

Next, Defendants move to dismiss Ball's contract claims.  Under New York law, four elements are required to plead a breach of contract: (1) the existence of a contract, (2) the performance of the contract by the plaintiff, (3) breach by the defendant, and (4) damages suffered as a result of the breach.  *See, e.g.*, *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).  Critically, however, "to bind a principal to a contract, an agent must have real or apparent authority to do so."  *PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F. Supp. 177, 182 (S.D.N.Y. 1994).  Apparent authority exists "if the principal has created the appearance of authority, leading the other contracting party to reasonably believe that actual authority exists."  *Themis Capital, LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 522 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also, e.g.*, *Four Star Capital Corp. v. Nynex Corp.*, No. 93 CIV. 3706 (LMM), 1993 WL 350016, at *6 (S.D.N.Y. Sept. 9, 1993) ("Under New York law, where a principal engages in words or conduct that give rise to the appearance that an agent has the authority to enter into a transaction, then the principal will be bound if a third party reasonably relies upon that appearance of authority." (internal quotation marks and brackets omitted)).

In this case, Ball alleges no facts that would support a finding that Alatriste acted within the scope of any actual authority to the extent that he offered Ball paid employment with the City Council. Instead, she relies primarily on the argument that he had apparent authority to do so. (Docket No. 37, at 14-15). But that argument falls short for two reasons. First, "[t]he existence of the apparent authority must be 'traceable' to the principal, and cannot be established by the unauthorized acts, representations or conduct of the agent." *In the Matter of the Arbitration Between Herlofson Management A/S and Ministry of Supply, Kingdom of Jordan*, 765 F. Supp. 78, 88 (S.D.N.Y. 1991). Here, however, the Amended Complaint contains no allegation that the City Council itself took any steps that could have been construed to confer authority on Alatriste to enter into employment contracts on its behalf. Second, and in any event, it was unreasonable as a matter of law for Ball to believe that Alatriste had actual authority to bind the City Council to paid employment. That was true at the outset given the complete absence of the formalities normally attendant to paid employment. Indeed, Ball does not appear to have completed *any* paperwork other than the "application" that she completed *after* she had begun working, and that application expressly referred to the position as "*unpaid*." And any reliance on Alatriste's apparent authority was patently unreasonable in the face of his conduct thereafter: his repeated claims that he was trying to get approval from others for her to be paid and his efforts to prevent Ball from raising the issue with Martinez and others. It is true that "the existence of apparent authority is normally a question of fact." *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 289 (2d Cir. 2003) (internal quotation marks omitted). But where a plaintiff fails to allege facts from which a plausible inference of apparent authority can be drawn, a court may resolve the issue as a matter of law. *See, e.g.*, *Forgione v. Gaglio*, No. 13-CV-9061 (KPF), 2015 WL 718270, at *24 (S.D.N.Y. Feb. 13, 2015) (citing cases); *see also, e.g.*, *4C Foods Corp. v.*

*Package Automation Co.*, No. 14-CV-2212 (CM), 2014 WL 6602535, at *6-7 (S.D.N.Y. Nov. 18, 2014); *One Source Envtl., LLC v. M + W Zander, Inc.*, 13 F. Supp. 3d 350, 364 (D. Vt. 2014); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. That is the case here.

Ball's contract claim against Alatriste in his individual capacity, meanwhile, fails for a different reason.[5] There is no allegation in the Amended Complaint that he intended to be personally bound by any agreement with Ball. That is, whether or not Alatriste acted within the scope of his authority (actual or apparent) when he allegedly offered Ball pay, it is undisputed that in all of her dealings with her he was purporting to act on behalf of the City Council and not on his own behalf. It follows that Ball's contract claim against Alatriste in his individual capacity must be and is dismissed. *See*, *e.g.*, *Value Time, Inc. v. Windsor Toys, Inc.*, 709 F. Supp. 436, 438 (S.D.N.Y. 1989) (holding that the individual defendant could not be held liable for breach of contract "[b]ecause he was acting in his capacity as an officer" and thus "cannot be held individually liable for the corporation's alleged breach of contract"); *see also, e.g.*, *Noel v. L & M Holding Corp.*, 35 A.D.3d 681, 682 (N.Y. App. Div. 2d Dep't 2006) ("The Supreme Court properly granted [the defendant's] motion for summary judgment dismissing the complaint insofar as asserted against him as there was no evidence to support a finding that [he] intended to be personally bound by the contract of sale between [the corporate defendant] and the plaintiffs.").

## C. The NYLL Claims

Ball's final claims — under NYLL Section 190 — can be quickly rejected. The NYLL explicitly provides that "[t]he term 'employer' shall not include a governmental agency." N.Y. Lab. Law § 190(3). In light of that provision, courts have dismissed NYLL claims against the

---

[5] Ball does not bring a contract claim against Martinez. (*See* Docket No. 54, at 7).

City of New York, the New York City Police Department, and the Metropolitan Transportation Authority. *See Eng v. City of New York*, No. 15 CIV. 1282 (DAB), 2017 WL 1287569, at *3 (S.D.N.Y. Mar. 29, 2017); *Hodgson v. City of New York*, No. 12 CV 1634 HB, 2013 WL 840874, at *6 (S.D.N.Y. Mar. 7, 2013); *D'Antonio v. Metro. Transp. Auth.*, No. 06 CV 4283 (KMW), 2008 WL 582354, at *5 (S.D.N.Y. Mar. 4, 2008). The City Council is, of course, the "principal legislative body of the City of New York." *Lifrak*, 389 F. Supp. 2d at 504. Accordingly, it does not qualify as an "employer" under the NYLL. And to the extent it does not qualify as an employer, neither do Alatriste and Martinez, as allowing Ball to bring claims against them under the NYLL would undermine the spirit, it not the letter, of the state statute.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and DENIED in part, the result being that only Ball's FLSA claims against the City Council and Alatriste survive. Although leave to amend a pleading should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and courts should generally grant *pro se* plaintiffs leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Exercising that discretion here, the Court declines *sua sponte* to grant Ball leave to amend her Amended Complaint to address the defects in the dismissed claims. First, a district court may deny leave to amend when, as here, amendment would be futile because the problems with a plaintiff's claims are "substantive" and "better pleading will not cure" them. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Second, Ball was already granted leave to amend her complaint to cure

deficiencies raised in Defendants' first motion to dismiss and was explicitly cautioned that she "w[ould] not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." (Docket No. 17). Finally, Ball "has not requested permission to file a [third amended complaint], nor has [she] given any indication that [she] is in possession of facts that would cure the problems" identified in this Opinion and Order. *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).

The City Council and Alatriste shall file answers Ball's FLSA claims within three weeks of this Opinion and Order. The Clerk of Court is directed to terminate Martinez as a party, to terminate Docket Nos. 24 and 51, and to mail a copy of this Opinion and Order to Ball.

SO ORDERED.

Date: September 26, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge